UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

MICHAEL D. SHOCKLEY,         )
                                     )
      Plaintiff,             )
                                     )
     v.                      )     CIVIL NO.  1:18cv171
                                     )
NANCY A. BERRYHILL, Acting    )
Commissioner of Social Security,   )
                                   )
      Defendant.          )

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) as provided for in the Social Security Act. 42 U.S.C. §416(I).  Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.     The claimant last met the insured status requirements of the Social Security Act

on December 31, 2014.

2.    The claimant did not engage in substantial gainful activity during the period from his amended alleged onset date of March 30, 2013, through his date last insured of December 31, 2014 (20 CFR 404.1571 *et seq.*).

3.    Through the date last insured, the claimant had the following severe impairments: degenerative disc disease, status post lumbar and cervical fusion surgeries; history of trochanteric bursitis; and, obesity (20 CFR 404.1520(c)).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: only occasional climbing of ramps and stairs; never climbing ladders, ropes, or scaffolds; occasional balancing, stooping, and crouching; no kneeling or crawling; frequent overhead reaching; and, no work around hazardous machinery or unprotected heights.

6.    Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.    The claimant was born on July 20, 1968, and was 46 years old, which is defined as a younger individual age 45-49, on the date last insured (20 CFR 404.1563.

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 an 20 CFR Part 404, Subpart P, Appendix 2).

10.    Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11.    The claimant was not under a disability, as defined in the Social Security Act, at

any time from March 30, 2013, the amended alleged onset date, through
December 31, 2014, the date last insured (20 CFR 404.1520(g).

(Tr. 46 - 57).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability

benefits. The ALJ's decision became the final agency decision when the Appeals Council denied

review. This appeal followed.

Plaintiff filed his opening brief on October 2, 2018. On November 13, 2018, the

defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff

replied on November 27, 2018. Upon full review of the record in this cause, this court is of the

view that the ALJ's decision must be remanded.

A five-step test has been established to determine whether a claimant is disabled. *See*

*Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-

91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test

as follows:

> The following steps are addressed in order: (1) Is the claimant
> presently unemployed? (2) Is the claimant's impairment "severe"?
> (3) Does the impairment meet or exceed one of a list of specific
> impairments? (4) Is the claimant unable to perform his or her
> former occupation? (5) Is the claimant unable to perform any other
> work within the economy? An affirmative answer leads either to
> the next step or, on steps 3 and 5, to a finding that the claimant is
> disabled. A negative answer at any point, other than step 3, stops
> the inquiry and leads to a determination that the claimant is not
> disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162

n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature

of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff was 44 years old as of the alleged onset date. He has a high school education. He has past relevant work as a carpenter. Upon application for Social Security benefits, and on subsequent appeals, Plaintiff alleged problems with spinal stenosis and fusion at L5 and S1, neuropathy, fibromyalgia, osteoarthritis, gout, mental slowness, difficulty coping, asthma, allergies, and hip bursitis.

Plaintiff states that he has to sleep in a chair due to his back and legs. [Dkt. 8 at p.321, R. 316]. He does not sleep well due to his pain. *Id*. His legs swell if he is on them for any length of time and he has to keep his legs elevated. *Id.* If he does get out to do anything he will usually be down for a day or two after. *Id*. He can usually tend to his own personal care, but sometimes he does need help with his pants, socks, and shoes. [Dkt. 8 at p.322, R. 317]. He does not do chores except putting a load of laundry in the washer if the clothes are handed to him and he sometimes folds the laundry if it is put in his lap. [Dkt. 8 at p.323, R. 318]. He cannot stand for any length of time to do dishes, he cannot bend over to do laundry, he cannot push and walk with a sweeper, and he cannot grip and push a lawnmower. [Dkt. 8 at p.324, R. 319]. He cannot drive for long distances as he cannot sit for long. *Id.*

Plaintiff sought treatment from Dr. Gundersen Watson for neck pain and headaches. [Dkt. 8 at p.414, R. 409]. He alleges that headaches occur daily and are associated with his neck pain. I*d*. They are all over and feel like tightness, pressure, pounding and throbbing. *Id*. He reports his neck pain is 7/10 in severity and can get as bad as 10/10. *Id*. The neck pain is described as burning, and is constant throughout the day with varying levels of severity. *Id*. His pain is decreased with prescription medication and is aggravated by weather changes and nothing else specific. *Id*. On examination he has decreased reflexes in the Achilles tendon and patellar tendons

and positive Tinel's sign on the greater occipital nerve. [Dkt. 8 at p.416, R. 411]. There is positive cervical facet loading bilaterally and positive cervical facet tenderness bilaterally. [Dkt. 8 at p.417, R. 412]. He has positive cervicothoracic myofascial trigger points in the trapezius bilaterally, positive occipital Tinel's test bilaterally and pain from C4-C7. *Id*. There is tenderness to the thoracic paraspinal muscles bilaterally and positive facet tenderness bilaterally. *Id*. In the lumbar spine there is positive joint tenderness bilaterally; positive lumbar facet tenderness bilaterally; positive lumbar facet loading bilaterally; positive Laseque's bilaterally; positive straight leg raise bilaterally; positive Torque bilaterally; positive Patrick's bilaterally; and radicular symptoms following a L5-S1 dermatomal pattern. *Id*. Hip examination revealed tenderness over the sacroiliac (SI) joints and pain with external rotation bilaterally. *Id*. Shoulder examination revealed positive drop arm on the left; positive rotator cuff tenderness bilaterally; and positive subacromial bursa tenderness bilaterally. *Id*. Plaintiff's list of diagnoses includes spasm of muscle; sleep disturbance not otherwise specified (NOS); low back pain/lumbago; shoulder bursae and tendon disorders NOS bilaterally; cervical spondylosis without myelopathy bilaterally; myalgia and myositis NOS; brachial neuritis or radiculitis NOS bilaterally at C6; thoracic or lumbosacral neuritis or radiculitis NOS bilaterally at L5; long-term use of medications; neck pain/cervicalgia bilateral; lumbar pain bilateral; headache; cervical syndrome/occipital neuralgia bilateral; status post L4-L5 fusion; subacromial bursitis on the right; rotator cuff syndrome on the right; arthritis; and vitamin D deficiency. [Dkt. 8 at pp.416-417, R. 412-413]. A brain MRI for his numbness, headaches and visual disturbance was unremarkable. [Dkt. 8 at p.582, R. 577].

Plaintiff reported to his treating doctor that he continues to have daily headaches, severe

neck pain that radiates to the bilateral shoulders and hands, and low back pain that radiates to the left hip and left lower leg. [Dkt. 8 at pp.527, 533, 547, 552, 558, 564, R. 522, 528, 542, 547, 553, 559]. The low back pain feels like pressure, is achy, and constant, and increases with changes in the weather. *Id*. Fentanyl and Percocet help with his pain. His received an epidural but it provided no relief from his pain. [Dkt. 8 at pp.527, 543, R. 522, 538]. He is assessed as having cervical radiculopathy at C7, lumbar radiculopathy at L4-L5, failed back surgery, and bilateral hip osteoarthritis. [Dkt. 8 at p.535, R. 530].

Plaintiff presented for surgical evaluation of his lumbar, cervical, and thoracic spine pain. [Dkt. 8 at p.622, R. 617]. It was noted that he had a difficult time reporting his symptoms as he was easily distracted and needed constant redirection. *Id*. He reports occipital headaches and bilateral upper extremity weakness with numbness and tingling. *Id*. A previous C4/5 fusion did not relieve any of his symptoms. *Id*. He has mid upper back pain with wraparound pain that is worse with bending and twisting. *Id*. He has low back pain with radicular symptoms of bilateral posterior thigh pain and numbness and tingling down to his toes. *Id*. His activities of daily living are limited by persistent pain. *Id*. He has decreased reflexes throughout, abnormal heel and toe walk, and antalgic gait. [Dkt. 8 at p.624, R. 619]. On examination he has spinal pain throughout, painful and limited range of motion throughout, positive Jackson's Compression test, Phalen's test, Tinel's Test, Spurling's test, straight leg raise, and reduced muscle strength in the tibialis, peroneals, and extensor halluces longus. [Dkt. 8 at p.625, R. 620]. A nerve conduction study was normal with no electrodiagnostic evidence of radiculopathy or neuropathy. [Dkt. 8 at p.637, R. 632].

A cervical spine MRI revealed degenerative disc disease throughout, from C3/4 to C7/T1.

[Dkt. 8 at p.595, R. 590]. At C3/4 there is a bulging disc, and from C3/4 through C5/6 there is

fusion hardware. *Id*. The diagnostic impression was that of cervical bulging, herniated disc with

nerve compression and cervical degenerative disc disease. [Dkt. 8 at p.596, R. 591]. A thoracic

spine MRI showed degenerative disc disease and bulging discs at T2/3 through T5/6. [Dkt. 8 at

p.607, R. 602]. His diagnoses are displacement of thoracic intervertebral disc without myelopathy

and degeneration of thoracic or thoracolumbar intervertebral disc. *Id*. There is tenderness in the

mid-thoracic region and lower, and kyphosis of the thoracic spine. [Dkt. 8 at p.608, R. 603].

Lumbar spine MRI reveals L4/5 and L5/S1 degenerative disc disease and bulging discs with

post-operative changes, fusion and hardware at L5/S1. [Dkt. 8 at p.619, R. 614]. There is residual

broad based disc bulging but only mild mass effect at L5/S1, and at L4/5 there is desiccation with

broad based bulging producing contact with the thecal sac in the lateral recess and foraminal

regions. [Dkt. 8 at p.621, R. 616]. It was opined that Plaintiff is a reasonable candidate for a

junctional decompression at the left L4/5 segment and epidural steroid injection. *Id*. Two days

later, Plaintiff underwent a lumbar laminotomy including partial facetectomy with decompression

of the nerve root, left L4/L5 and percutaneous lysis of adhesions with caudal epidural steroid

injection. [Dkt. 8 at p.650, R. 645]. He then underwent a diagnostic cervical selective nerve root

block at right C7. [Dkt. 8 at p.632, R. 627]. The following day he underwent a cervical

laminotomy and foraminotomy, including partial facetectomy with decompression of the nerve

root at right C6/C7 and destruction by thermal ablation of the paravertebral facet joint nerves at

left C6/C7. [Dkt. 8 at p.653, R. 648]. After that he underwent bilateral C6/7 paravertebral facet

joint injections. [Dkt. 8 at p.610, R. 605].

Plaintiff previously underwent a fusion at C4/5 and C6/7 which relieved most of his

8

symptoms but did not help his mid back pain. [Dkt. 8 at p.598, R. 593]. He also has pain in his lower back that wraps around his lower ribs to his abdomen. *Id*. He has pain in his neck, intra-scapular region, both shoulders, arms and hands, he has numbness and tingling in his arms and hands, and burning, weakness and atrophy in his hands. *Id*. He also suffers headaches. *Id*. On average his pain is 5-6/10 at rest and 6-10/10 when active. Id. His neck pain is increased with laying, looking up, looking down and driving. *Id*. The pain is reduced with ice and a recliner. *Id*. He was observed to have an abnormal heel and toe walk and a shuffling gait. [Dkt. 8 at p.603, R. 598]. Range of motion in the cervical spine, shoulders, elbows, and wrists is painful and limited throughout. [Dkt. 8 at p.604, R. 599]. Muscle strength is reduced to 3 in the deltoids, biceps, triceps, trapezius, wrists, hands and grip. *Id.* His diagnoses include displacement of cervical intervertebral disc without myelopathy; degeneration of cervical intervertebral disc; and brachial neuritis or radiculitis NOS. *Id*. Plaintiff underwent a diagnostic cervical selective nerve root block at the right C4. [Dkt. 8 at p.629, R. 624]. He then underwent a cervical laminotomy and foraminotomy, including partial facetectomy with decompression of the nerve root at right C3/C4 and destruction by thermal ablation of the paravertebral facet joint nerves at left C3/C4. [Dkt. 8 at p.655, R. 650]. After the paravertebral facet joint injections, Plaintiff reported partially resolved radicular pain, numbness, tingling, burning and weakness. [Dkt. 8 at p.593, R. 588].

Plaintiff attended a consultative examination by a Social Security examiner reporting his inability to work due to spinal stenosis, fusion at L5, neuropathy, fibromyalgia, osteoarthritis, gout, mental slowness, asthma, allergies, bursitis, and difficulty coping. [Dkt. 8 at p.660, R. 655]. He noted frequent headaches, occasional blurred vision, occasional fatigue, and constant tinnitus. *Id*. He reported he can walk one block, stand thirty minutes, climb one flight of stairs, and lift

eight pounds in either arm. [Dkt. 8 at p.661, R. 656]. His physical examination as normal except he has an antalgic gait favoring his left lower extremity; he is unable to walk on heels, toes, tandem walk or squat; there is positive straight leg raise both sitting and supine on the left; and he has reduced strength at 4/5 in the left lower extremity. [Dkt. 8 at p.663, R. 658]. He has reduced range of motion in the cervical spine with flexion, extension, lateral flexion bilaterally; and with bilateral rotation; in the lumbar spine with forward flexion, extension, and lateral flexion bilaterally; and in the bilateral shoulders with abduction and forward elevation. [Dkt. 8 at p.665, R. 660]. The examiner did not make a medial source statement. [Dkt. 8 at p.666, R. 661].

Plaintiff also underwent a psychological consultative examination by a Social Security examiner. After a mental status examination it was opined that he has Major Depressive Disorder, recurrent, mild and slowed processing speed and delayed working memory. [Dkt. 8 at p.674, R. 669]. His overall quality and complexity of cognition is estimated to be mildly impaired as evidenced in his slow thought processing and delayed working memory. *Id*. The examiner opined that Plaintiff should be able to understand, remember, and carry out simple instructions in a sustained manner. [Dkt. 8 at p.675, R. 670]. His ability to interact in a reasonably effective and stable manner with the general public and coworkers is mildly impaired. *Id.* He was tearful throughout the examination. *Id*. He is able to perform basic daily living activities such as bathing and grooming himself. *Id*. He is able to conduct some household chores but his girlfriend and children help with many of them. *Id*. He does not cook. *Id*. he is able to mow using a riding mower but the vibrations from the mower hurt his back and his son also helps with the mowing. *Id*.

Record reviewers at the application and reconsideration levels opined that Plaintiff's

degenerative disc disease and major joint dysfunction are severe impairments, and his anxiety disorder was considered non severe. [Dkt. 8 at pp.169, 180, R. 164, 175]. His mental impairment was considered under listing 12.06 for anxiety disorders on reconsideration. *Id*. Under the "B" criteria of this listing it was opined that he has mild restriction of activities of daily living, no difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace. [Dkt. 8 at p.180, R. 175]. He is moderately limited with the ability to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. [Dkt. 8 at p.160, R. 159]. His spine disorder was considered under listing 1.04, and his joint dysfunction was considered under listing 1.02. [Dkt. 8 at pp.169, 181, R. 164, 176]. It was opined he is able to lift and/or carry twenty pounds occasionally and ten pounds frequently. [Dkt. 8 at pp.170, 182, R. 165, 177]. It was opined that Plaintiff can stand and/or walk for a total of two hours and sit for a total of about six hours in an eight hour workday. *Id*. He can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. [Dkt. 8 at pp.170-171, 182, R. 165-166, 177].

Plaintiff states that there is significant evidence after the date last insured that indicates all of his severe impairments and symptoms continued. He has shoulder pain radiating to the upper back and right side of neck with a burning sensation as well as numbness and tingling in both arms and swelling in both hands. [Dkt. 8 at p.720, R. 715]. His pain level when sitting is 7/10, and increases to 8/10 with movement. *Id.* He has joint pain; swelling of the joints, hands,

knuckles, knees, legs and feet; radiating burning pain on the outside of the lower leg; and hand numbness and burning. *Id*. He has neck pain and stiffness and is unable to turn his head to the right. *Id*. On examination he exhibits decreased range of motion, tenderness, swelling, deformity, pain and spasm in the cervical spine. *Id.* In the thoracic and lumbar back he exhibits decreased range of motion, tenderness, bony tenderness, swelling, edema, pain and spasm. *Id*. Plaintiff returned to Dr. Wynder for continued knee pain and ankle pain. [Dkt. 8 at p.707, R. 702]. He reported that the injection did help some in the left knee, but it is locking now. *Id*. Knee x-rays show a large anteroinferior osteophyte at the distal tibia that probably impinges at the tibiotalar joint limiting ankle dorsiflexion. *Id*. He received betamethasone injections into the right knee and left ankle for osteoarthritis. *Id*. CT of the left lower extremity revealed small calcaneal spurs and a focal area of sclerosis in the posterior talus of uncertain etiology. [Dkt. 8 at p.710, R. 705].

A new cervical MRI revealed fairly severe right degenerative facet hypertrophy and mild right paramedian and posterolateral disc annular bulge combining to cause fairly severe right foraminal stenosis at C3-4. [Dkt. 8 at p.702, R. 697]. At C6-7 there is very minimal posterior disc bulge. *Id*. There are post fusion changes at C4-5 and C5-6. *Id.* Lumbar spine MRI revealed disc degeneration with mild generalized annular bulging and small left paramedian and posterolateral endplate osteophytes; moderate degenerative fact hypertrophy; and post fusion changes with mild epidural scarring in the left subarticular recess at L5-S1 in the vicinity of the left S1 nerve root. [Dkt. 8 at p.703, R. 698]. At L4-5 there is disc dehydration with mild generalized annular bulging; moderately severe bilateral degenerative facet hypertrophy; 2 mm degenerative anterolisthesis; and mild bilateral inferior neural foraminal stenosis. *Id.* At L3-4 there is mild bilateral degenerative facet hypertrophy. *Id.* At L2-3 there is minimal generalized disc bulge, mild

degenerative facet arthrosis, and very slight degenerative anterolisthesis. *Id.*

Plaintiff underwent a bilateral coccygeal nerve block for his coccydynia. [Dkt. 8 at p.927, R. 922]. Plaintiff was seen by an ear nose and throat specialist for his tinnitus. [Dkt. 8 at pp.836, 838, R. 831, 833]. He reported he has migraines, fibromyalgia, obstructive sleep apnea, dizziness, vertigo, tinnitus and veering to the left when walking for several months as well. *Id.*

Plaintiff was seen in the chronic pain clinic in follow-up for his back and neck pain. [Dkt. 8 at p.886, R. 881]. He reported that his pain is mitigated with nothing and increased with activity. *Id.* His pain was 7/10 at the appointment and is 10/10 at its worst. *Id.* He has had no change in function. [Dkt. 8 at p.887, R. 882]. On examination he has pain to palpation over the cervical paraspinous muscles and pain with neck flexion, extension, and lateral flexion. [Dkt. 8 at p.890, R. 885]. Straight leg raising in the sitting and supine positions is positive to radicular pain, there is decreased range of motion of the lumbar spine with pain, and there is pain to palpation over the lumbar spine or costovertebral angles. *Id.* He has an antalgic gait and walks with a cane. [Dkt. 8 at p.891, R. 886]. He has primary osteoarthritis of both hips, chronic bilateral low back pain with bilateral sciatica, bilateral chronic knee pain, primary osteoarthritis of both knees, chronic pain disorder, and Raynaud's phenomenon. *Id.* He underwent a cervical epidural steroid injection for his cervical radiculopathy. [Dkt. 8 at p.935, R. 930].

He underwent an open plantar fascial release and arthroscopy with extensive debridement of the left ankle. Fourteen weeks after his ankle surgery, Plaintiff continued to have intermittent dull, burning pain rated at 4/10 in severity, as well as numbness and tingling on top of the left foot. [Dkt. 8 at p.865, R. 860]. He did note that his condition has improved, but walking too much makes it worse. *Id.* He was still taking Percocet and Fentanyl for pain. *Id.*

At the hearing, Plaintiff testified that between April 2013 and December 2014 he could not work because he has having issues after surgeries. [Dkt. 8 at p.83, R. 78]. He was not able to walk, or he used a cane and was very slow. [Dkt. 8 at p.84, R. 79]. His legs were swollen as well. *Id*. He was kept in the hospital for a couple days at that point. *Id*. He had been using a cane off and on to walk until around 2013, and began using it more steadily since his hospitalization. [Dkt. 8 at p.85, R. 80]. After his ankle surgery, he was in a wheelchair, then crutches, then back to the cane. *Id*. When sitting he has pain in his low back. [Dkt. 8 at p.86, R. 81]. He had to make sure he had padding on a chair, and his leg would go stiff if he sat too long, which was thirty to forty minutes, and his legs would swell if he did not elevate them. [Dkt. 8 at p.88, R. 83]. After thirty to forty minutes of sitting he would have to get up to stand and stretch or walk a bit. [Dkt. 8 at p.89, R. 84]. He was not taking prescription pain medication at the time because he did not have insurance, so he only took ibuprofen and Tylenol for his pain. *Id*. When he did get insurance he received injections and prescription pain medications, muscle relaxers, and anti-inflammatories. [Dkt. 8 at p.90, R. 85]. He tried to do laundry, but had a hard time doing it and would get frustrated and angry. [Dkt. 8 at p.93, R. 88]. He could not do the bending and twisting to take the clothes from the basket to the machine or to transfer between the washer and dryer. *Id*. He can cook for about five minutes, get items out of the refrigerator or get pots and pans from the cabinet, but he cannot bend down or get on his knee. [Dkt. 8 at p.94, R. 89]. He has a small kitchen counter and testified he could probably wipe it off, but he cannot straighten up around the house because he could not pick things up off the floor or sweep due to the pain it would cause in his hips and radiate up in his back or down into his legs. [Dkt. 8 at p.95, R. 90]. His son used to mow the yard for him. *Id.* He could go to the store to get one item with a shopping cart that he

would have his children push because it was difficult for him to twist it around the corners. [Dkt. 8 at p.97, R. 92]. He has had a TENS unit since 2009. [Dkt. 8 at p.99, R. 94]. He would use it every day. [Dkt. 8 at p.100, R. 95]. He required help putting on socks and shoes. *Id*.

Stasia Grover, Plaintiff's girlfriend, also testified at the hearing. She testified that they moved in together in September 2014, and prior to that she noticed that he needed a lot of help with activities around the house, such as laundry or dishes. [Dkt. 8 at p.102, R. 97]. She would help take care of his children when they would visit during the agreed custody times. [Dkt. 8 at p.103, R. 98]. She had to help him get dressed, at first by helping with shoes and socks, but then she had to start helping with his pants and shirts as well. [Dkt. 8 at p.104, R. 99]. He used the cane occasionally when they first started dating, but by December 2014 he was using it all the time. [Dkt. 8 at p.105, R. 100].

The ALJ asked the vocational expert (VE) to assume an individual of Plaintiff's age, education, and work experience. [Dkt. 8 at p.114, R. 109]. In his first hypothetical the ALJ asked the VE to assume this individual can lift no more than ten pounds frequently or occasionally. *Id*. They can stand and walk no more than two hours out of an eight hour workday, and sit six hours out of an eight hour workday. [Dkt. 8 at p.115, R. 110]. They can occasionally climb ramps and stairs, balance, stoop and crouch, but can never climb ladders, ropes or scaffolds, kneel, or crawl. *Id*. They can frequently reach overhead. *Id.* They should not be working around hazardous machinery or unprotected heights. *Id.* They are limited to simple, routine and repetitive tasks with only occasional interaction with coworkers and supervisors. *Id.* The VE testified that this individual could not perform Plaintiff's past work, and there are no transferable skills in sedentary occupations. *Id*. This individual could still perform work as a circuit board tester, costume jewelry

maker, or eyeglass assembler. [Dkt. 8 at p.116, R. 111]. The VE also testified that an employee is expected to be on task approximately 85% of the workday, or off-task no more than 15% of the workday. *Id.* Exceeding that, there is no full-time competitive employment. [Dkt. 8 at p.117, R. 112]. Further, employers will, on average, allow an employee to have ten to twelve unscheduled absences per year after a probationary period of thirty or sixty days where absenteeism is not tolerated by some employers. *Id.* So if an individual were absent one day per month on average, there is no full-time competitive employment available. *Id.* Plaintiff's attorney then asked the VE to assume the ALJ's first hypothetical and add that the individual could never stoop or crouch. [Dkt. 8 at p.118, R. 113]. The VE testified this limitation would not change the availability of any of the previously identified jobs. *Id.* The attorney then changed the first hypothetical to include no interaction with the public and only superficial interaction with coworkers. *Id.* The VE testified that this would also not change the jobs listed. *Id.* When asked about use of a cane, the VE testified that a cane is not an issue at the sedentary level. *Id.*

In support of remand, Plaintiff first argues that the ALJ failed to provide explanation regarding the finding that Plaintiff's impairments do not meet or equal Listing 1.04 and to obtain medical opinion as to possible equaling of that Listing. In the decision, the ALJ states that "through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments . . ." [Dkt. 8 at p.55, R. 50]. The ALJ then goes state that Plaintiff does not have an impairment that meets the criteria of Listing 1.04 as there is no evidence of root compression, limitation of motion, motor loss, and a positive straight leg raise, neither is there evidence of spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication. *Id.* Plaintiff argues that, to the contrary,

there is an abundance of evidence that meets the criteria of the Listing. Plaintiff further argues

that an ALJ has no trained medical knowledge or experience to justify making this finding

without the assistance of a medical professional.

This court agrees with Plaintiff that the ALJ's analysis regarding Listing 1.04 is

inadequate. As set forth in the Disability Standard, "a claimant is eligible for benefits if [he] has

an impairment that meets or equals an impairment found in the Listing of Impairments." *Barnett*

*v. Barnhart*, 381 F.3d 664, 668 (7th Cir.2004) (citing 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404,

Subpt. P., App. 1). "In considering whether a claimant's condition meets or equals a listed

impairment, the ALJ must discuss the listing by name and offer more than a perfunctory analysis

of the listing." *Id.* (citing *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir.2003);

*Scott v. Barnhart*, 297 F.3d 589, 595–96 (7th Cir.2002); *Steele v. Barnhart*, 290 F.3d 936, 940

(7th Cir.2002)).

Listing 1.04(A) requires a disorder of the spine, such as degenerative disc disease,

resulting in compromise of a nerve root or the spinal cord with evidence of nerve root

compression characterized by neuro-anatomic distribution of pain, limitation of motion of the

spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied

by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg

raising test (sitting and supine). The ALJ stated that there was no evidence of limitation of

motion, motor loss, and a positive straight leg raise. [Dkt. 8 at p.55, R. 50]. As Plaintiff points

out, not only is there an abundance of evidence controverting this statement, but later in the

decision the ALJ himself pointed out in his summary of evidence that Plaintiff's gait was

antalgic, he uses a cane, straight leg raise was positive, lower extremity strength is diminished,

and range of motion was decreased at the consultative examination. [Dkt. 8 at p.59, R. 54].

There are, in fact, multiple objective findings that could satisfy the requirements of listing 1.04 that the ALJ failed to mention in his listing discussion. Degenerative disc disease: [Dkt. 8 at pp.595, 604, 607, 619, R. 590, 599, 602, 614]. Nerve compression: [Dkt. 8 at p.596, R. 591]. Neuro-anatomic distribution of pain: [Dkt. 8 at pp.417, 535, 622, R. 412, 530, 617]. Limitation of motion of the spine: [Dkt. 8 at pp.604, 625, 663, R. 599, 620, 658]. Motor loss or muscle weakness: [Dkt. 8 at pp.598, 604, 625, 663, R. 593, 599, 620, 658]. Sensory or reflex loss: [Dkt. 8 at pp.417, 624, R. 412, 619]. Positive straight-leg raising test: [Dkt. 8 at pp.417, 625, 663, R. 412, 620, 658]. Plaintiff also underwent a lumbar laminotomy with partial facetectomy and decompression of the nerve root at L4/L5, C3/C4, and at C6/C7, further indicating existence of nerve root compression. [Dkt. 8 at pp.650, 653, 655, R. 645, 648, 650]. Under "Examination of the Spine," § 1.00(E)(1) of Appendix 1 states: "Inability to walk on the heels or toes, to squat, or to arise from a squatting position, when appropriate, may be considered evidence of significant motor loss." Plaintiff has demonstrated inability to walk on heels or toes and squat as well: [Dkt. 8 at pp.603, 663, R 598, 658].

Courts "have repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it. *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012). The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). The ALJ in this case presented only a skewed version of the evidence." *Moore v.*

*Colvin*, 743, F.3d 1118, 1123 (7th Cir. 2014).

"Under a theory of presumptive disability, a claimant is eligible for benefits if she has an impairment that meets or equals an impairment found in the Listing of Impairments." *Barnett v. Barnhart*, 381 F.3d. 664, 668 (7th Cir. 2004) (citing 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1). In light of the above referenced evidence, the ALJ's failure to provide more than a perfunctory discussion of Listing 1.04 constitutes error.

Despite the fact that there appears to be sufficient evidence to support a finding that Plaintiff's back impairment meets Listing 1.04(A), it is not the position of a lawyer or an ALJ to interpret medical findings. In other words, there are several objective findings throughout the record that require professional analysis. Whether a claimant's condition equals a listed impairment is strictly a medical determination. 20 C.F. R. §§ 404.1526(b), 416.926(b). A finding of equivalence allows a "presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *Hickman v. Apfel*, 187 F.3d 683 (7th Cir. 1999). According to SSR 96-6p, the ALJ should obtain an updated medical opinion from a medical expert where additional evidence is received that could modify the State Agency medical consultant's finding that the impairment was not equivalent in severity to any impairment in the Listing of Impairments. The ALJ erred in not seeking the opinion of a medical advisor as to whether Plaintiff's impairments equaled a Listing. Accordingly the ALJ's decision will be remanded.

By failing to utilize the medical experts available for testimony and medical record interpretation, the ALJ is impermissibly playing doctor. *Rohan v. Chater*, 98 F.3d 966, 970-71 (7th Cir. 1996); *Bailey v. Barnhart*, 473 F.Supp.2d 842, 849 (N.D. Ill. 2006). An ALJ is not

19

permitted to make individual judgments on medical documentation. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) made it clear that this temptation is not to be allowed. An ALJ as a layperson is not qualified to interpret raw data in the medical record. *Manso-Pizarro v. Secretary*, 76 F.3d 15, 17 (1st Cir. 1996). In the present case, the ALJ erred in not seeking the opinion of a medical advisor as to whether Plaintiff's impairments equaled a Listing. Thus, remand is appropriate. Like the ALJ in *Barnett*, the ALJ here "simply assumed the absence of equivalency without any relevant discussion. That assumption cannot substitute for evidence and does not support the decision to deny benefits." *Barnett v. Barnhart*, 381 F.3d 664 (7th Cir. 2004).

Next, Plaintiff argues that the ALJ erred by dismissing the severity of his frequent headaches. The ALJ considered Plaintiff to have severe impairments of degenerative disc disease, status post lumbar and cervical fusion surgeries; history of trochanteric bursitis; and obesity. [Dkt. 8 at p.52, R. 47]. The ALJ noted that Plaintiff's hearing loss, gout, fibromyalgia, asthma, knee and ankle arthritis, and depression and/or anxiety are nonsevere. [Dkt. 8 at pp.52-53, R. 47-48]. Plaintiff contends that the ALJ wholly ignored evidence of Plaintiff's severe headaches that occur daily and are associated with his neck pain.

In the ALJ's summary of the medical record he stated that Plaintiff "also reported headaches. . ." [Dkt. 8 at p.57, R. 52]. He later found that after a cervical laminotomy and foraminotomy, Plaintiff indicated that he had not had a migraine since the procedures. [Dkt. 8 at p.58, R. 53]. He also stated that "evidence does not support chronic headaches during the period at issue that would have more than minimally affected work-related activities." *Id.* As Plaintiff notes, the ALJ ignores a significant number of reports of headaches when he only mentions one record. Also, the indication that Plaintiff had not had a migraine since the cervical surgery holds

no weight as it was a statement made one day after the procedure. And finally, Plaintiff frequently reported to his doctors complaining of persistent headaches that occur daily, and feel like tightness, pressure, pounding, and throbbing, both before and after the surgical procedure, throughout the relevant time period. [Dkt. 8 at pp.414, 416, 418, 527, 533, 547, 552, 558, 564, 582, 598, 622, 660, R. 409, 411, 413, 522, 528, 542, 547, 553, 559, 577,593, 617, 655]. None of this evidence was ever discussed by the ALJ and he does not explain his rationale behind finding that these chronic headaches would not more than minimally affect work-related activities.

An ALJ may not select and discuss only that evidence which favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the reviewing court to trace the path of his reasoning. *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). *See also Gilkey v. Barnhart*, 417 F.Supp.2d 949 (N.D. Ill. 2006); *Murphy v. Barnhart*, 417 F.Supp.2d 965 (N.D. Ill. 2006). An ALJ cannot simply omit consideration of evidence contrary to his conclusion.

An impairment is non-severe only when the impairment is so slight that it has no more than a de-minimis effect on the ability to perform basic work activities. Social Security Ruling 85-28. Furthermore, when resolution of the issue is unclear, adjudicators are to go to the next step of evaluation. "An impairment is not severe if it does not significantly limit your physical or mental abilities to do basic work activities." 20 C.F.R. 404.1521(a) and 416.921(a). *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), and *Estran v. Heckler*, 745 F.2d 340 (5th Cir. 1984), stated that "an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." As *Baeder v.*

*Heckler*, No. 84-5663 (3rd Cir. July 24, 1985), suggested, the severity regulation is to do no "more than allow the Secretary to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working." This court agrees with Plaintiff that the ALJ's analysis of Plaintiff's migraines was insufficient considering the evidence of record. Because the ALJ failed to sufficiently articulate the assessment of the evidence to assure that he considered important evidence, remand is warranted. *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). *See also Gilkey*, 417 F. Supp. 949 at 963-64.

As the ALJ failed to account for Plaintiff's headaches in terms of the impact they have on his ability to work, remand is warranted.

Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby REMANDED for further proceedings consistent with this Opinion.

Entered: January 14, 2019.

s/ William C.  Lee
William C. Lee, Judge
United States District Court